No. 12,245.

INDUSTRIAL COMMISSION *v.* PEOPLE EX REL. METZ.

Decided October 21, 1929.

378

Mr. William L. Boatright, Attorney General, Mr. Charles Roach, Deputy, Mr. Robert E. Winbourn, Attorney General, Mr. Arthur L. Olson, Assistant, for plaintiff in error.

Mr. Fred S. Caldwell, for defendant in error.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

During the latter part of the year 1927 controversies arose between coal mine workers and coal mine operators of Colorado over wages and working conditions. In conference between them the workers were represented by their state executive committee of striking miners, of which Charles Metz is a member; the operators had their own representatives. These respective

representatives were not able to reach a satisfactory settlement or agreement of the controversy. Whereupon Charles Metz, in behalf of the workers, filed a petition with the Industrial Commission of Colorado, which by statute has the power to investigate and pass upon such matters, asking it to assume jurisdiction and investigate and determine them. The Industrial Commission acted upon this request, assumed jurisdiction of the dispute, and entered upon a hearing and investigation of the same under the authority conferred upon it by our General Assembly. The hearing progressed for about sixty days. The miners were represented by their executive committee and their attorney. The mine operators appeared by their managers and attorney. The evidence was transcribed for the use of the commission soon after the hearing was closed about the middle of February, 1928.

The principal grievances of the miners their counsel group under two heads: (1) Working conditions; (2) wages. As to the working conditions the commission finished its investigation on March 20, 1928, and then announced its conclusion thereon, and that phase of the controversy is eliminated. At the same time the commission announced that its findings on the wage question would be reported later. Thereafter, as the commission had not proceeded, as the representatives of the miners alleged, with reasonable diligence to conclude its investigation and render a final award as to wages, there was filed in the Denver district court a petition or complaint by the people, on the relation of Charles Metz, secretary of the miners' committees, against the Industrial Commission of Colorado, as defendant, in which was asked an order for an alternative writ of mandamus, upon final hearing to be made peremptory, requiring the commission to promulgate and announce its final award and decision in the matter of its investigation as to the question of wages in the coal mines of this state.

The foregoing statement is, in substance, what the petition for the writ contains. To this petition and writ

the defendant, by the Attorney General, filed a general demurrer and also an answer or return in which it is alleged that in December, 1927, and for sixty days prior thereto, a strike was in progress among the coal miners in many of the principal coal mining camps and districts of the state. The defendant commission admits that there was filed with it in December a so-called schedule of grievances and demands of certain coal miners, and that other petitions purporting to be signed by other coal miners of the state were also presented about that time, and that on December 19, 1927, it entered upon a general investigation of the working conditions of the coal mines of Colorado, but denies the averment of the complaint that this investigation was entered upon or conducted pursuant to section 27 of the Industrial Commission Act of 1915 (§4351, C. L. 1921), but, on the contrary, that the investigation under which it proceeded, was pursuant to section 26 of the statute (§4350, C. L. 1921). The answer further alleges that soon after September 6, 1927, the defendant commission received a letter purporting to be signed by the secretary of the so-called strike committee of the Aguilar conference of the Walsenburg branch of the "I. W. W.," enclosing a demand for increased wages and changes in working conditions in all of the coal mines of the state, in which letter it was also stated that if the demands were not met by the coal operators a strike would be called to take effect October 1, 1927, and thereafter under date of September 17, 1927, the defendant commission received a letter purporting to be signed by the same person notifying the commission that the date of the strike had been extended to October 18.

Section 29 of the statute provides that employees shall give to the defendant commission and to their employers at least 30 days' prior written notice of an intended change affecting conditions of employment, or with respect to wages or hours, and that such notice by the employees shall be signed by them or members of a com-

mittee authorized to do so. It was upon receipt of this letter of September 6, that the defendant commission entered upon a preliminary inquiry to ascertain whether the same was signed by employees of any coal mining operator in the state, or by any members of an authorized committee, and as a result of this investigation the commission found, and so determined, that the latter had not been so signed, and therefore the commission concluded that the letter did not constitute a legal notice of any intended change affecting conditions of employment, or with respect to wages or hours, and that any strike thereafter called, or put into effect, pursuant to such letter or notice would be unlawful and contrary to the provisions of the statutes of the state, and therefore, that the defendant commission should not enter upon an investigation of any dispute or controversy, resulting in the unlawful strike, with the view of making any findings or award pursuant to sections 27 or 29 or 30 or 31 of the Industrial Commission Law which are applicable to disputes, in the circumstances therein stated.

What the commission meant was that as a result of its investigation it did not deem it to be its duty or province to attempt to mediate and, by the rendition of findings or award, to settle a strike that was unlawful and contrary to the statutes of the state in its very inception, because such a course of action upon its part would be to condone a strike entered upon and continued in defiance of the statutes of this state, and for such reasons the commission at all times refrained from acting under the powers conferred upon it under the last designated sections of the statute. The defendant also sought for and obtained the advice of the Attorney General of the state as to the legality of this strike, and was advised by him that it was unlawful, and contrary to the statutes of the state, because of the failure of the employees of the respective coal mining operators to give to this defendant commission the written notice as provided for by section 29 of the act. That, although having reached the

conclusion as to the illegality of the strike, and notwithstanding the fact that no lawful notice had ever been given, many of the coal miners of the state went on strike on or about October 18, 1927, and after this strike had continued for a considerable time and shortly prior to December 19, 1927, the defendant commission concluded, of its own volition, and upon its own initiative, to take action pursuant to the broad powers conferred upon it by section 26 of the Industrial Commission Act (§4350, C. L. 1921), and to conduct an inquiry of its own, and not at the request or demand of the representatives of the strikers, into the general conditions that appeared to have resulted in, or contributed to, the continuance of the strike, with a view of ascertaining the true facts of the situation and making findings under its general powers and of thereafter announcing such conclusions as it might deem proper and conducive to the public interest and as tending to bring about a cessation of the existing disturbed conditions in the coal industry of the state.

Such a hearing was thereupon undertaken and continued for about 60 days, during which time a large amount of testimony was taken and transcribed. The inquiry covered a wide range of matters, including wages earned by coal miners in Colorado, but such inquiry was mainly concerned with working conditions in mines. In pursuance thereof, and as a result of such investigation, the defendant commission, on March 20, 1928, reduced to writing and announced certain conclusions and recommendations relative to working conditions, and also stated that its findings concerning the wage controversy would be reported later. Shortly before the time of publication of its conclusions and recommendations the unlawful strike theretofore existing had ended, and the commission believed that, although it was improper for it to attempt to mediate an unlawful strike, and it had not done so, and would not do so, nevertheless it conceived that the publication of its findings relative to

working conditions would be conducive to the public interest, in that it might tend to the promotion of more satisfactory working conditions among the miners of the state, and thereby prevent or postpone the recurrence of similar disturbances in the industry. The commission further alleges in its answer that such conclusions and recommendations were not published as, nor were they intended to be, an award under section 31 or section 29, or any other section, of the Industrial Commission Act, because the defendant commission had not deemed it to be its province or duty to enter awards as the result of a strike which it had already found and determined to be unlawful. And while the commission admits that it has not rendered or announced any recommendations relative to the question of wages, it denies that any relator or any other person has been prejudiced thereby, and the commission further says that even though its inquiry had been conducted under sections 27, 29 or 30 of the act, as plaintiff says it was, any decision or award that it might have made thereunder would not be binding upon or conclusive or enforceable either against the striking coal miners or the coal mine operators of the state, because it is provided by section 31 of the act that no decision or award of defendant commission rendered pursuant to these sections shall be binding upon, or conclusive or enforceable either against the employers or the employees, unless both shall have, in writing, agreed to accept and be bound by the terms of such decision, and in this instance not only was the strike above mentioned wholly unlawful, but neither the coal mining operators, nor any of them, nor the striking miners, nor any of them, ever agreed, in writing or otherwise, to accept or to be bound by any decision or award which the defendant commission might make in the premises.

The commission further avers in its answer that while it received and heard much testimony in its investigation on its own initiative under section 26, that investi-

gation was directed mainly to the matter of working conditions, and while it afforded a basis with respect to these conditions, the commission found, upon studying the evidence from the standpoint of wages, that it did not afford a satisfactory basis for any conclusion upon that subject, which is an extremely complicated one, and involves an exhaustive inquiry along numerous lines. The defendant commission further says that at the time of the publication of its report on working conditions, the unlawful strike had ended, the mining industry had begun to return to a state of peace and tranquillity, and in view of the fact that the commission was unable to arrive at any satisfactory conclusion as to what recommendation, if any, it should make concerning the matter of wages, and the fact that peace, good order and tranquillity had practically been restored to the mining industry, it concluded that no beneficial purpose would be served, either to the mining industry, or to the general public by the announcement or publication of any conclusions, even if it had arrived at any, on the matter of wages.

As the result of our study of the record and the pertinent provisions of our Industrial Commission Act, we deemed it the most satisfactory method of disposing of this controversy to state, as we have done, the contents of the pleadings of the parties; for they, of themselves, are conclusive that the judgment below is wrong. The plaintiff has not traversed any of the allegations of the answer. To the contrary, plaintiff filed a general demurrer thereto, thereby admitting to be true all of its well pleaded allegations, and also filed a motion for judgment on the pleadings and thereby again admitting as true the allegations of the answer. The trial court overruled defendant's demurrer to the complaint, sustained the plaintiff's demurrer to the defendant's answer and return to the alternative writ, and plaintiff's motion for judgment on the pleadings, and thereupon made the alternative writ peremptory and commanded the defend-

ant commission to proceed forthwith to render its final award and decision as to the question of wages.

As preliminary it should be stated that the parties are not in accord as to what particular sections or provisions of our Industrial Commission Act are applicable to the facts above outlined. Plaintiff says that the investigation by the commission was conducted not merely under section 26, but also, and principally, under section 27, of the act. The former section contains broad investiture of power in the commission of its own volition to inquire into the general conditions of labor in the principal industries of the state; the latter to promote voluntary arbitration and conciliation of disputes to avoid the necessity of resort to strikes and lockouts. The defendant says that its investigation was begun and conducted under the provisions of section 26, but not at all under the provisions of section 27, which are applicable only to a period of time anterior to the strike and that this strike had been, and was, in progress in this case long before its jurisdiction was invoked. If the matter was of importance it would be easy to demonstrate that the position of the commission is correct. But even if sections of the statute other than 26 are here involved, and the attitude of the commission at different times was somewhat ambiguous or inconsistent, nevertheless we are constrained to say that the judgment of the trial court under the admitted facts is entirely wrong and wholly unsupported thereby.

■ ■ At, and for sometime before, the conclusion of the hearing before the commission, and when it announced its decision as to working conditions, the strike itself was ended. It announced its decision, however, as to working conditions because it deemed such action conducive to the public interest, as tending to promote more satisfactory working conditions among the miners of the state, and as tending to prevent or postpone a recurrence of similar disturbances of the mining industry. The commission avers and, as we have said, it is not con-

tradicted, that its conclusions and recommendations were not announced as, or published, or intended to be, an award under sections of the statute invoked by plaintiff. The commission also states in its answer, which is admitted, that even if it had been proceeding under these last named sections, or any other provision of the statute invoked, no award or decision that it might make in this proceeding would be binding or conclusive against either side to the dispute, because section 31 of the act specifically provides that no decision or award by the commission rendered pursuant to the designated sections shall be binding upon or conclusive or enforceable against either the employer or employee, unless both of them shall have agreed in writing to accept and be bound by the terms of such decision or award, and neither of the parties here signed such a writing. The strike itself being unlawful and neither the miners nor the operators having made such an agreement, it would have been folly and idle and useless ceremony for the commission to have proceeded to make an abstract announcement. The law never requires a useless thing. The commission, as it expressly states, and there is no contradiction, being unable to arrive at any satisfactory conclusion as to what recommendation, if any, it should make concerning the matter of wages, and the fact that the strike had ended and peace, good order and tranquillity had been practically fully restored to the coal mining industry in this state, wisely and properly concluded that no beneficial purpose would be served either to the industry itself or to the general public or to the parties to the dispute by the abstract announcement or publication of any conclusion or recommendation as to wages, which would not be binding upon either party to the dispute.

Our General Assembly by this Industrial Commission Act, and amendments thereto, invested the Industrial Commission, its agent, with broad and comprehensive powers in the investigation, adjustment and settlement of disputes among employers and employees in

the great industries of the state. We do not say that the power of the Industrial Commission is unlimited, or that its decisions and recommendations may not be set aside by the courts where there has been a manifest abuse of discretion, or want of jurisdiction, or where the commission has acted in excess of its legitimate powers, or where findings are not supported by the evidence. We are constrained to say that in this case and upon this record the commission kept well within its powers. Though it may have apparently taken inconsistent positions at different times during the investigation, no injury has been done to the legitimate mine workers of the state. Upon the facts alleged in the answer, and admitted to be true by failure to deny, the making of the alternative writ peremptory was manifestly wrong. The trial court should have upheld the defendant. The judgment is therefore reversed, and the cause remanded, with instructions to the district court to vacate its judgment, and to enter judgment dismissing the action at the plaintiff's costs.

MR. JUSTICE BUTLER not participating.